UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIGER A. ROGERS,

        Plaintiff,

    v.                                          CAUSE NO. 3:22-CV-691-DRL-MGG

RON NEIL *et al.*,

        Defendants.

OPINION AND ORDER

Tiger A. Rogers, a prisoner without a lawyer, filed a complaint against twelve defendants. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Rogers alleges that, on October 4, 2020, Officer Hill asked him if he was high. Mr. Rogers said he wasn't high. Officer Hill did a pat down search of Mr. Rogers and told him to cuff up. Mr. Rogers asked why, and Officer Hill said that they were going to MSU. Officer Hill wouldn't explain why they were going to MSU. When they arrived, Nurse Tiffany told Mr. Rogers to sit in a chair. She asked Mr. Rogers for his name and DOC number. He provided them. Without more, Nurse Tiffany approached with Narcan in

both hands. Mr. Rogers told her to stop and that he wasn't high. She nodded at Officer Hill. He responded by placing Mr. Rogers in a choke hold so that Nurse Tiffany could administer the Narcan. Mr. Rogers was compliant until this point, but he then began resisting. Officer Hill pulled Mr. Rogers over backward by his neck, causing Mr. Rogers and the chair to crash to the floor. Mr. Rogers then lost consciousness. Narcan was administered while he was unconscious.

Supervisor Lt. Cassaneda arrived to find Officer Hill and Mr. Rogers on the floor after the Narcan had been administered. She heard Mr. Rogers gasping for breath and ordered Officer Hill to let go of him, but she didn't otherwise reprimand or chastise Officer Hill. Someone helped Mr. Rogers to his feet and took him to a holding cell. He had cuts on his arms, legs, and back from the encounter.

Inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). To establish such a claim, the prisoner must demonstrate that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id.* "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted). Moreover, a prisoner's right to refuse medical treatment can be overridden by "a prison regulation that is reasonably related to legitimate penological interests." *Id.* at 343; *see also Russell v. Richards*, 384 F.3d 444, 447-50 (7th Cir. 2004) (concluding inmate's liberty interest in refusing unwanted medical treatment of delousing shampoo was overridden by jail policy designed to address legitimate interest in avoiding outbreaks of lice). "[I]f

2

legitimate penological interests dictate that a particular treatment must be administered even if the prisoner would have refused it, then . . . there is no constitutional right to refuse treatment[.]" *Knight*, 942 F.3d. at 343 (quoting *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006)). The facts may ultimately show that Mr. Rogers' behavior was indicative of an opioid overdose, in which case Nurse Tiffany may have acted reasonably to provide life-saving treatment. However, at the pleading stage, the court must credit Mr. Rogers' statement that he wasn't under the influence of opioids and clearly communicated his desire to refuse Narcan to Nurse Tiffany. Therefore, he will be permitted to proceed on a Fourteenth Amendment claim against Nurse Tiffany for administering Narcan against his will on October 4, 2020.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Giving Mr. Rogers the inferences to which he is entitled at this stage, he states a plausible Eighth Amendment claim against Officer Hill for placing him in a choke hold on October 4, 2020.

Mr. Rogers also sued Lt. Cassaneda, who intervened to stop Officer Hill but didn't further reprimand or chastise him. Mr. Rogers doesn't have a constitutional right to have

3

Officer Hill reprimanded or punished by his superiors. Therefore, he won't be permitted to proceed against Lt. Cassaneda.

Following the incident, Mr. Rogers was moved to a different holding cell. Officer Canteberry told Mr. Rogers that Nurse Tiffany said he would need to spend the night in the cell. The unit was so cold that the officers were wearing their coats. Mr. Rogers asked Officer Canteberry for a blanket, but he refused to give him one, noting that only people on suicide watch get them. Mr. Rogers yelled for help. Mr. Rogers saw two black female officers. One made a comment that Mr. Rogers describes as "smart"—he doesn't indicate what was said. He responded by calling the officers names. Additional comments were made by both the officers and Mr. Rogers. Sgt. Canteberry then said that was "strike 2" and sprayed Mr. Rogers with OC spray. Mr. Rogers turned away to protect his face. Sgt. Canteberry then drenched Mr. Rogers' backside in OC spray, focusing on his buttocks. Sgt. Canteberry was laughing and said he had all day. At one point, Mr. Rogers turned around. Sgt. Canteberry continued spraying, focusing on his genitals. After a short time, Sgt. Canteberry placed Mr. Rogers in cuffs and took him to the shower. Sgt. Canteberry allegedly turned on the cold water for only a few seconds and then said they were done. Mr. Rogers remained handcuffed. Sgt. Canteberry grabbed Mr. Rogers' arms, banged his head into the wall, and then pulled him out of the shower. Mr. Rogers was taken back to the same holding cell and ordered to remove his clothes. Sgt. Canteberry took all his clothes, left, and then returned to take Mr. Rogers back to his cell. Mr. Rogers refused to go anywhere alone with him. On this pleading, Mr. Rogers will be granted leave to proceed against Sgt. Canteberry for excessive force and cruel and unusual punishment.

Around 9:30 p.m., Sgt. Bass came to the cell where Mr. Rogers was being housed with the same clothes Sgt. Canteberry had taken from him and ordered him to put them on. Mr. Rogers put them on. He was handcuffed and his pants were around his ankles, without underwear. The two female officers Mr. Rogers had the verbal exchange with were waiting for him and made fun of his genitalia. Mr. Rogers was then walked back to his cell by Sgt. Bass with his genitalia exposed. It can be plausibly inferred that Mr. Rogers is alleging that he wasn't permitted to pull up his pants and was forced to walk down the range with his genitals exposed, without a valid correctional justification, and for the purposes of harassing or humiliating him. Therefore, he will be permitted to proceed against Sgt. Bass.[1]

Once Mr. Rogers had been returned to his cell, he asked the cell house officers for a shower and medical attention. His request was denied. He asked to see a "white hat," and that request was also denied. He then lit a fire in his cell to obtain the attention of someone higher up. Lt. Neil arrived with an unknown officer to find Mr. Rogers squeezing his scrotum. They laughed at his pain and denied him both a shower and medical attention, stating that he would just have to let the OC gas run its course.

---

[1] Mr. Rogers further alleges that Sgt. Bass threw a couple family photos in his toilet. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." But, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees, and they provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

In evaluating an Eighth Amendment deliberate indifference claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As this circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted). Though it would be unprofessional to laugh at Mr. Rogers, the complaint doesn't contain facts from which it can be plausibly inferred that Lt. Neil was deliberately indifferent to Mr. Rogers' needs.

Mr. Rogers talked with Major Wardlow about the incident on October 12, 2022. Major Wardlow opined that, if Mr. Rogers walked to MSU, he didn't need Narcan. Major Wardlow indicated he was in talks with the medical provider concerning when to administer Narcan. Major Wardlow instructed Mr. Rogers to write him about the incident. Mr. Rogers sent a letter, as instructed, but Major Wardlow didn't respond. These

allegations do not state a claim. Mr. Rogers does not have a right to a response to his letter.

Mrs. Suida was Mr. Rogers' counselor, and Mr. Rogers alleges she retaliated against him. She was the Disciplinary Hearing Board member in a disciplinary case where sanctions were vacated because she made a mistake. This didn't sit well with her, so she tried to make Mr. Rogers pay by turning in time sensitive documents late or not at all, including two requests to have camera footage of the events giving rise to this complaint preserved. Other paperwork she failed to process resulted in Mr. Rogers spending an additional five weeks in solitary confinement. Mr. Rogers further alleges that Pam Banes colluded with Mrs. Suida to inflict personal punishment on him.

"To prevail on his First Amendment retaliation claim, [Mr. Rogers] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Mr. Rogers hasn't identified any protected First Amendment activity or alleged facts permitting an inference that any First Amendment activity was a motivating factor in the alleged retaliatory action. Furthermore, his allegations regarding the alleged deprivation are too vague to state a claim. Therefore, Mr. Rogers can't proceed against Mrs. Suida or Pam Banes on a retaliation claim.

Mr. Rogers filed grievances against Mrs. Suida, but Joshua Wallen denied them. Mr. Rogers alleges that Wallen colluded with Mrs. Suida, resulting in grievance appeals

being stamped received days after they were turned in or not being returning to him. Mr. Wallen's denials of Mr. Rogers' grievances allegedly "green lighted" Mrs. Suida's retaliation, which allegedly continued. However, Mr. Rogers does not identify any retaliatory act occurring after he filed the grievances against Mrs. Suida. Furthermore, Mr. Rogers has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, Mr. Rogers can't proceed against Mr. Wallen or Mrs. Suida for interfering with the grievance process.

Mr. Rogers also claims that he experienced mail inconsistencies when he was trying to send out a notice of tort claim related to these events. He filed a grievance against Sgt. Nelson, and Sgt. Nelson allegedly retaliated by destroying 28 personal photographs. Mr. Rogers was charged to return the photos to his niece, and Sgt. Nelson claimed he sent them. Later he allegedly admitted he destroyed them. These allegations are too vague to state a claim. Therefore, Mr. Rogers can't proceed against Sgt. Nelson

Finally, Mr. Rogers alleges that Warden Ron Neil and Major Wardlow are responsible for the policies and customs of Indiana State Prison and the behavior of their employees. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and defendants cannot be held individually liable simply because they employed or supervised an alleged wrongdoer. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Therefore, these allegations don't state a claim.

For these reasons, the court:

(1) GRANTS Tiger A. Rogers leave to proceed against Nurse Tiffany in her individual capacity for compensatory and punitive damages for administering Narcan against his will on October 4, 2020, in violation of the Fourteenth Amendment;

(2) GRANTS Tiger A. Rogers leave to proceed against Officer Hill in his individual capacity for compensatory and punitive damages for using excessive force against him when applying a choke hold on October 4, 2020, in violation of the Eighth Amendment;

(3) GRANTS Tiger A. Rogers leave to proceed against Sgt. Canteberry in his individual capacity for compensatory and punitive damages for spraying Mr. Rogers with OC spray, providing an inadequate decontamination shower, and banging his head against the wall on October 4, 2020, in violation of the Eighth Amendment;

(4) GRANTS Tiger A. Rogers leave to proceed against Sgt. Bass in his individual capacity for compensatory and punitive damages for requiring Mr. Rogers to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him on October 4, 2020, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES Lt. Cassaneda; Lt. Neil, Major Wardlow, J. Wallen, Mrs. Suida, Pam Banes, Sgt. Nelson, Warden Ron Neil.

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Tiffany at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 2);

(8) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Hill, Sgt. Canteberry, Sgt. Bass at Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(9) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who doesn't waive service if it has such information; and

(10) ORDERS, under 42 U.S.C. § 1997e(g)(2), Nurse Tiffany, Officer Hill, Sgt. Canteberry, and Sgt. Bass to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

March 24, 2023  *s/ Damon R. Leichty*
Judge, United States District Court