UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TIGER A. ROGERS,

    Plaintiff,

v.

JACOB HILL *et al.*,

    Defendants.

CAUSE NO. 3:22-CV-691 DRL-SJF

## OPINION AND ORDER

Tiger A. Rogers, a prisoner without a lawyer, is proceeding in this case on four claims. First, he is proceeding against Nurse Tiffany Turner "for administering Narcan against his will on October 4, 2020, in violation of the Fourteenth Amendment[.]" ECF 10 at 9. Second, he is proceeding against Officer Jacob Hill "for using excessive force against him when applying a choke hold on October 4, 2020, in violation of the Eighth Amendment[.]" *Id.* Third, he is proceeding against Sgt. Jamill Canteberry "for spraying Mr. Rogers with OC spray, providing an inadequate decontamination shower, and banging his head against the wall on October 4, 2020, in violation of the Eighth Amendment[.]" *Id.* Fourth, he is proceeding against Sgt. Dorell Bass "for requiring Mr. Rogers to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him on October 4, 2020, in violation of the Eighth Amendment[.]" *Id.*

Sgt. Bass and Sgt. Canteberry filed a joint motion for partial summary judgment. ECF 100.[1] Nurse Turner filed a separate summary judgment motion. ECF 104. After receiving a time extension, Mr. Rogers filed a response to Nurse Turner's motion for summary judgment. ECF 115, 116. He still hasn't filed a response to Sgt. Bass' and Sgt. Canteberry's motion, and the time for doing so has expired. The court will now rule on both summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

---

[1] Sgt. Canteberry requests summary judgment only on Mr. Rogers' claim he provided an inadequate decontamination shower, and does not seek summary judgment on his claim he sprayed him with OC spray and banged his head on the wall.

A. *Nurse Turner.*

Mr. Rogers is proceeding against Nurse Turner for violating his Fourteenth Amendment rights by administering Narcan against his will on October 4, 2020. ECF 10 at 9. Inmates have a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). A prisoner must demonstrate that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id.* at 343. "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to shock the conscience." *Id.* (citation and quotations omitted). Moreover, a prisoner's right to refuse medical treatment can be overridden by "a prison regulation that is reasonably related to legitimate penological interests." *Id.*; *see also Russell v. Richards*, 384 F.3d 444, 447-50 (7th Cir. 2004) (concluding inmate's liberty interest in refusing unwanted medical treatment of delousing shampoo was overridden by jail policy designed to address legitimate interest in avoiding outbreaks of lice). "[I]f legitimate penological interests dictate that a particular treatment must be administered even if the prisoner would have refused it, then . . . there is no constitutional right to refuse treatment." *Knight*, 942 F.3d. at 343 (*quoting Pabon v. Wright,* 459 F.3d 241, 252 (2d Cir. 2006)).

Nurse Turner provides Mr. Rogers' medical records and deposition testimony. On October 4, 2020, Officer Hill brought Mr. Rogers to the medical unit because he suspected Mr. Rogers was under the influence. ECF 104-2 at 3. Officer Hill sat Mr. Rogers in the vitals chair so he could be evaluated by Nurse Turner and told Nurse Turner he believed

3

Mr. Rogers was under the influence. ECF 104-1 at 24. Nurse Turner took a can of Narcan from the medical cabinet, and Mr. Rogers stated repeatedly that he was not under the influence and did not want or need Narcan. *Id.* at 25-26. Officer Hill then placed Mr. Rogers in a "rear naked choke hold," and Mr. Rogers attempted to "defend" himself by leaning backwards in the chair and kicking at Nurse Turner. *Id.* at 26-27. This caused the vitals chair to tip backwards, and Mr. Rogers and Officer Hill fell to the ground. *Id.* at 27. Mr. Rogers lost consciousness momentarily due to the choke hold, and regained consciousness while still being held by Officer Hill. *Id.* at 27. Mr. Rogers didn't believe he'd received any Narcan at that time, but later learned at a subsequent medical visit that Nurse Turner had given him Narcan. *Id.* at 27-28. Mr. Rogers believes Nurse Turner administered the Narcan to him on October 4 while he was unconscious. *Id.* at 28.

Nurse Turner also provides a copy of Facility Directive ISP 20-03: Administration of NARCAN, a facility directive instructing prison staff how and when to administer Narcan to inmates: "Opioid intoxication results in unresponsiveness and respiratory depression, and must be treated as a life-threatening emergency by all Health Services and Correctional staff members." ECF 104-5 at 1. "Opioid (e.g., morphine, oxycodone, hydrocodone, fentanyl, and heroin) overdose is reversible through the immediate administration of Narcan, a quick-acting opioid antagonist that blocks the actions of opioids." *Id.* at 1. Directive ISP 20-03 provides a list of symptoms associated with opioid intoxication and instructs that "[i]f doubt exists regarding the offender's level of consciousness or source of intoxication, Narcan should still be administered, as it has no significant adverse effects." *Id.* at 2.

4

Nurse Turner argues summary judgment is warranted in her favor because she was not deliberately indifferent for administering Narcan to Mr. Rogers on October 4. ECF 106 at 5-8. Specifically, Nurse Turner argues it's undisputed Officer Hill informed her Mr. Rogers was under the influence when they arrived at the medical unit and she made the split-second decision to administer Narcan once Mr. Rogers fell unconscious to ensure his safety. *Id.* In his response, Mr. Rogers argues Nurse Turner was deliberately indifferent for administering Narcan while he was actively refusing the medication, was completely sober, had informed her he was not under the influence of any substance, and had volunteered to give her a urine sample to prove he was not intoxicated. ECF 116 at 2-10.

Here, accepting as true that Mr. Rogers was not under the influence on October 4 and had expressed this fact to Nurse Turner, the undisputed facts still show Nurse Turner was not deliberately indifferent for administering Narcan on this occasion, as it's undisputed Mr. Rogers was lying unconscious on the floor when the Narcan was administered. Specifically, it's undisputed that (1) when Mr. Rogers arrived at the medical unit, Officer Hill informed Nurse Turner he suspected Mr. Rogers was under the influence; (2) Mr. Rogers began resisting and kicking at Nurse Turner when she approached him with Narcan; (3) Mr. Rogers fell to the floor and went unconscious due to Officer Hill's "choke hold" while resisting the application of Narcan; and (4) Nurse Turner only administered the Narcan once Mr. Rogers was unconscious on the floor. Mr. Rogers conceded in his deposition that he was unconscious when the Narcan was

5

administered.² Based on the evidence available to Nurse Turner at that time, she was not deliberately indifferent for making a split-second decision to believe Officer Hill over Mr. Rogers and to apply Narcan to ensure Mr. Rogers' safety. *See* ECF 104-5 at 2 ("[i]f doubt exists regarding the offender's level of consciousness or source of intoxication, Narcan should still be administered, as it has no significant adverse effects"); *Goetsch v. Ley*, 444 F. App'x 85, 88-89 (7th Cir. 2011) ("prison officials are not required to believe everything inmates tell them"); *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) (prison staff are entitled to be skeptical of an inmate's assertions, as "[p]risoners can be manipulative, using deceit to obtain advantages"); *Pulera v. Sarzant*, 966 F.3d 540, 553 (7th Cir. 2020) (concluding it was reasonable for a nurse to rely on a correctional officer's assessment regarding an inmate's symptoms). Because no reasonable jury could conclude Nurse Turner's decision to administer Narcan to Mr. Rogers on October 4 was "so egregious as to 'shock the conscience,'" summary judgment is warranted in her favor. *See Knight*, 942 F.3d at 343.

---

² Mr. Rogers states in his response that he "believes he was administered Narcan while sitting, and physically protesting such administration, in the vitals chair." ECF 115 at 4. But this is inconsistent with Mr. Rogers' deposition testimony, where he testified he fell unconscious before any Narcan was administered and he didn't realize he'd been given Narcan until a subsequent medical visit. ECF 104-2 at 27-28. Therefore, Mr. Rogers' prior deposition testimony prevents him from now arguing he was conscious at the time the Narcan was administered. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (the sham affidavit rule "prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony.").

B. *Sgt. Canteberry.*

Mr. Rogers is proceeding against Sgt. Canteberry for violating his Eighth Amendment rights by providing him an inadequate decontamination shower on October 4, 2020. ECF 10 at 9. Specifically, Mr. Rogers alleged in his complaint that Sgt. Canteberry only allowed him to use a decontamination shower for "a few seconds" after he was sprayed with OC spray. ECF 2 at 6. Sgt. Canteberry argues summary judgment is warranted in his favor because he provided Mr. Rogers with an adequate decontamination shower. ECF 101 at 1-2.

Sgt. Canteberry attests to certain facts. On October 4, he was informed that Mr. Rogers was acting disruptive and verbally assaulting prison staff in a holding cell in the medical unit. ECF 100-2 at 1. Sgt. Canteberry went to the holding cell to try to deescalate the situation. *Id.* When Sgt. Canteberry arrived, Mr. Rogers threw two food trays at him, striking him in the torso. *Id.* Sgt. Canteberry deployed OC spray against Mr. Rogers, and then provided Mr. Rogers with a ten-minute decontamination shower that he says was consistent with IDOC policies and procedures. *Id.*

Here, Mr. Rogers doesn't respond to or dispute any of these facts in his summary judgment response. Moreover, Mr. Rogers conceded at his deposition that he wasn't sure how long the decontamination shower lasted. He testified: "How long I was in that decontamination shower, I don't know . . . in opinion and order from the federal judge, I believe he questioned how long I was in a shower because I said I was only in there for a few minutes. If it was the full 10 or 15 minutes, whatever the law is, I do not know." ECF 100-1 at 6-7. Because there's no evidence in the record the decontamination shower

7

provided by Sgt. Canteberry was inadequate at ten minutes, no reasonable jury could conclude Sgt. Canteberry violated Mr. Rogers' Eighth Amendment rights by providing him an inadequate decontamination shower. Therefore, summary judgment is warranted in favor of Sgt. Canteberry on this claim.

    C. *Sgt. Bass.*

Mr. Rogers is proceeding against Sgt. Bass for violating his Eighth Amendment rights on October 4 by requiring him to walk down the range naked without a valid correctional justification and for the purposes of harassing or humiliating him. ECF 10 at 9. Sgt. Bass argues summary judgment is warranted in his favor because he did not act with the purpose of harassing or humiliating Mr. Rogers and, regardless, he's entitled to qualified immunity on this claim. ECF 101 at 3-5.

Sgt. Bass relies solely on Mr. Rogers' deposition testimony. Following his decontamination shower on October 4, Mr. Rogers refused to be escorted anywhere by Sgt. Canteberry. ECF 100-1 at 25. Sgt. Bass arrived at the holding cell to transport Mr. Rogers back to his cellhouse. *Id*. Sgt. Bass returned Mr. Rogers clothes to him and allowed him to get dressed. *Id*. Mr. Rogers' pants were loose because he was not wearing any boxers, as all of his boxers were in the laundry. *Id*. Moreover, his pants were heavy because they were drenched with water from the decontamination shower. *Id*. As a result, Mr. Rogers' pants started falling down during the escort back to his cellhouse. *Id*. During the walk back to his cell, Mr. Rogers' pants fell down and Sgt. Bass did not assist Mr. Rogers in pulling his pants back up, leaving Mr. Rogers temporarily exposed. *Id*. at 25-26. Mr. Rogers testified he believed Sgt. Bass refused to help him pull his pants up

because "for him to bend over to pull up my pants would put him where he don't want to be." *Id.*

Claims of forced public nudity "are evaluated under the same standard as claims of humiliating strip searches." *Godfrey v. Easton*, Case No. 1:19-cv-00752-TWP-MPB, 2021 WL 4066496, 4 (S.D. Ill. 2021). A search violates the Eighth Amendment if it is performed with the intention of harassing or humiliating an inmate. *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (noting that strip searches can violate the Eighth Amendment if they are motivated by a desire to harass and humiliate rather than by a legitimate justification, such as a need for order and security); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (holding that a strip search will violate the Eighth Amendment only if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain").

Here, there's no evidence Sgt. Bass acted with an intent to harass or humiliate Mr. Rogers. Specifically, it's undisputed Mr. Rogers' pants fell down during the escort because they were loose and heavy, and there's no evidence Sgt. Bass was in any way responsible for Mr. Rogers' pants falling down. And though Sgt. Bass might be said to have declined to help Mr. Rogers pull his pants up during the escort, there's no evidence Sgt. Bass' refusal was motivated by an intent to harass or humiliate Mr. Rogers. Rather, Mr. Rogers testified he believed Sgt. Bass refused to assist him because he didn't want to get close to his exposed genital area. Based on the evidence in the record, Sgt. Bass' refusal to help Mr. Rogers pull his pants up did not rise to the level of an Eighth Amendment violation.

Alternatively, even assuming Sgt. Bass' refusal to help Mr. Rogers pull his pants up rose to the level of an Eighth Amendment violation, Sgt. Bass is entitled to qualified immunity on this claim. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quotations and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Here, there's no evidence it's clearly established the Constitution requires a correctional officer to assist in pulling up the pants of an inmate whose pants have accidentally fallen down while being escorted in the prison. Neither Mr. Rogers nor the court's independent research have identified any case law showing the violation of a clearly established right. Therefore, even assuming Sgt. Bass' failure to assist Mr. Rogers in pulling up his pants rose to the level of a constitutional violation, Sgt. Bass is entitled to qualified immunity on this claim.

For these reasons, the court:

(1) GRANTS Sgt. Bass and Sgt. Canteberry's motion for partial summary judgment (ECF 100);

(2) GRANTS Nurse Turner's motion for summary judgment (ECF 104);

(3) DISMISSES Sgt. Bass and Nurse Turner from this action;

(4) DISMISSES Mr. Rogers' claim against Sgt. Canteberry for "providing an inadequate decontamination shower"; and

(5) REMINDS the parties this case is now proceeding only on Mr. Rogers remaining claims:

- a. against Officer Hill in his individual capacity for compensatory and punitive damages for using excessive force against him when applying a choke hold on October 4, 2020, in violation of the Eighth Amendment; and

- b. against Sgt. Canteberry in his individual capacity for compensatory and punitive damages for spraying Mr. Rogers with OC spray and banging his head against the wall on October 4, 2020, in violation of the Eighth Amendment.

SO ORDERED.

May 30, 2025                              *s/ Damon R. Leichty*
                                          Judge, United States District Court